UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. BANK NATIONAL ASSOCIATION as Trustee for the benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB47,

     *Plaintiff,*

v.

GMC HOLDING, LLC; CARLO CAREDDU; GIANPIERO CAREDDU; MARIA VITALE; CITY OF NEW YORK DEPARTMENT OF ENVIRONMENTAL CONTROL; and "JOHN DOE #1" through "JOHN DOE #20," the twenty names being fictitious and unknown to the Plaintiffs, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in lien upon the premises,

     *Defendants.*

Civil Action No. 1:24-cv-04150-AS

---

## [PROPOSED] ORDER APPOINTING RECEIVER

THIS MATTER having been brought before the Court on motion of Akerman LLP, attorneys for plaintiff U.S. Bank National Association as Trustee for the benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB47 ("**Plaintiff**"), upon notice to defendant GMC Holdings, LLC ("**Borrower**"), for an Order appointing a receiver; and the Court having considered the papers submitted in support of the within motion and the papers filed in opposition thereto, if any; and having heard argument, if any; and for good cause shown,

IT IS on this 11Th day of SEPTEMBER, 2024, ORDERED as follows:

1. Stephen J. Ginsberg, with office at 400 Garden City Plaza, 2nd Floor, Garden City, NY 11530, Telephone No. (516) 873-2000, is appointed as the temporary receiver ("**Receiver**") of Borrower's Assets (as defined herein).

2. Upon entry of this Order, Receiver, acting as a fiduciary of the Court, is hereby authorized and empowered to take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of Borrower (collectively, "**Borrower's Assets**"):

   a. Borrower's interest in the real property commonly known as and located at 378 and 380 E 139th Street, Bronx County, New York (Block 2301, Lot 21 and 22), and more particularly described in **Schedule A** annexed hereto (the "**Mortgaged Property**");

   b. All personal property pledged as collateral to the Plaintiff, wherever located (the "**Personal Property**");

   c. All non-privileged documents, instruments, agreements and materials in Borrower's and/or its agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, financing, operation, preservation and protection of Borrower's Assets, including, without limitation, all service agreements, work reports, advertising materials, forms, contracts, licenses, permits, floor plans, space plans, specifications, surveys, maps, and drawings of the Mortgaged Property, access codes, alarm codes, keys or combinations, passwords with respect the Mortgaged Property, e-mail records, computers, accounting software, merchant credit card machines and access numbers to them, maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, security systems, or other systems for which Borrowers have had maintenance or repair obligations within the two (2) years immediately preceding the date of this Order, to the extent that the foregoing is in the possession, custody, or control of Borrower;

   d. All checking, savings, depository, payroll, vendor, petty cash, reserve, or other accounts relating to the Mortgaged Property and held by or for the benefit of Borrower, including, without limitation, accounts maintained for operating expenses, credit card transactions, reservation deposits, capital reserves, and any accounts utilized by employees at the Mortgaged Property, whether in the name of Borrower, any management company or other entity, and the account information and contact information for the financial institution, and the last three (3) months of statements of such accounts, except for the ones directly held or actually controlled by Plaintiff, together with all funds contained therein, to the extent that the foregoing is in the possession, custody, or control of Borrower;

  e. All utilities, utility accounts, utility deposits, and meters relating to the Mortgaged Property, to the extent that the foregoing is in the possession, custody, or control of Borrower;

  f. All employee payroll records relating to the Mortgaged Property;

  g. All policies of insurance relating to the Mortgaged Property;

  h. All rents, rental rolls, rental lists, tenant contact names and information, tenant ledgers, tenant files, tenant histories, records pertaining to occupancy (including, without limitation, all guest/occupant ledgers, reservation reports, credit card billings, occupancy tax records, and all property tax or occupancy tax identification numbers, and cash receipts journals, guest/transient bookings, banquet/facility bookings), collections and payments, revenues, refunds and other income from, relating to or derived from the Mortgaged Property received on or after the date of this Order;

  i. All security, utility, prepayments and other deposits received by Borrower and/or its agents after the date of this Order and any deposits made by Borrower to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Mortgaged Property; and

  j. The originals, if any in the possession or control of Borrower, of all leases, subleases, licenses, franchise agreements, tenant notices, lease amendments, side agreements, easement agreements, in Borrower's or its agents' possession or control relating to the use or occupancy of the Mortgaged Property.

3. Borrower, its agents, employees, members, managers, officers and representatives, and any and all other contractors, persons and entities retained, hired or engaged by any Borrower (collectively, the "**Borrower Parties**") are hereby ordered (a) to immediately surrender possession and control of the Mortgaged Property to Receiver; (b) to immediately surrender possession and control of all Borrower's Assets in their possession and control, specifically and unless already provided to Receiver; and (c) to immediately deliver to Receiver a current completed and executed W-9 form for Borrower showing Receiver's address of 400 Garden City Plaza, 2nd Floor, Garden City, NY 11530. All such documents shall be submitted to Receiver within ten (10) business days of the date of this Order. Any future income related to the Mortgaged Property shall be turned over to Receiver immediately upon receipt.

4.     Upon entry of this Order, Receiver, acting as a fiduciary of the Court, is hereby authorized and empowered to take any and all actions as are necessary and appropriate and in good faith to carry out its powers and fulfill its duties without further approval of the Court, including the following:

   a. to demand, collect and receive, from the tenants of the Mortgaged Property, their sublessees or any occupants in possession, all rents, maintenance fees and/or other charges relating to the Mortgaged Property, now due and unpaid or which become due hereafter;

   b. to commence, institute, prosecute, defend, compromise, settle, dismiss, and/or intervene in, or become a party to, all legal actions or proceedings in state or federal courts, or any other proceeding, pending or otherwise, necessary for the protection, maintenance and preservation of the Mortgaged Property, and/or to carry out the terms of this Order, including but not limited to, defense against any action affecting the Plaintiff's lien on the Mortgaged Property, and/or to recover possession of the whole or any part thereof, including, but not limited to, proceedings for the collection of rents, maintenance fees and/or other charges relating to the Mortgaged Property due or hereafter to become due, and for removal of any tenant, subtenant and/or occupant in possession of any part of the Mortgaged Property, and/or defense against any action brought against Receiver acting in such capacity; and to appeal or otherwise seek to reduce the real estate taxes levied upon the Mortgaged Property. Subject to the written consent of Plaintiff, Receiver is authorized to hire legal counsel and to pay Receiver's legal counsel reasonable fees to represent Receiver in matters directly related to the receivership and operation of the Mortgaged Property;

   c. to rent or lease, from time to time, and to renew and/or modify such rentals or leases, as may be necessary, with respect to any part of the Mortgaged Property on commercially reasonable terms, provided if any such transaction requires a payment from Receiver to a tenant of more than five thousand dollars ($5,000.00), then Receiver shall obtain the consent of Plaintiff before entering into such transaction;

   d. to keep the Mortgaged Property, or any part thereof, insured against loss from theft, vandalism, fire or public liability or any other risk deemed prudent by Receiver;

   e. to pay property/ad valorem taxes and similar assessments, sewer and water charges (together with any penalties and/or interest due and owing therefor), assessments for public improvements, and common element expense charges, if any; provided however, in no event shall Receiver pay income taxes, sales taxes or other business taxes of Borrower nor be responsible for preparing any filings regarding the same, all of which are the responsibility of Borrower;

f. to impose upon and collect from the tenants and occupants unpaid obligations or any special assessments necessary to pay the expenses of operating the Mortgaged Property;

g. to make the repairs necessary, if any, for the preservation of the Mortgaged Property, or any part thereof, and as may be further necessary to bring same into conformity with all laws, ordinances or regulations pertaining to the Mortgaged Property, provided that Receiver may not make repairs costing more than five thousand dollars ($5,000.00) without the prior approval of either Plaintiff or the Court, except in the event of an emergency;

h. to otherwise do all things necessary or proper for the due care and proper management of the Mortgaged Property;

i. to employ or engage such firms and persons that are not insiders of or related to Borrower as it deems necessary to perform its services hereunder, including, but not limited to, attorneys, accountants, marketing agents, maintenance personnel, leasing agents and management firms, and to pay such persons reasonable compensation;

j. to retain and pay over to itself monthly, as a management fee, such percentage of the maintenance income, rental income and concession income, if any, collected from the Mortgaged Property as Plaintiff and Receiver shall agree upon;

k. to retain and pay over to itself, as incurred, expenses incurred by Receiver in fulfilling its obligations pursuant to this Order, including out-of-pocket expenses, provided, however, that any costs that are unusual or out of the normal course of operations shall require Court approval after notice to all interested parties;

l. upon request of Plaintiff in each instance, to use any surplus monies collected to make payments of principal and interest due under the mortgage debt held by Plaintiff;

m. to use the federal taxpayer identification number of Borrower for any lawful purpose related to the Mortgaged Property or this Order;

n. to open and maintain deposit accounts at any federally insured bank or financial institution using Borrower's federal taxpayer identification number for the purpose of depositing all proceeds and income collected from the Mortgaged Property and to withdraw such funds as are necessary to pay for the costs incurred to operate and maintain the Mortgaged Property;

o. to reject or terminate any agreement or contract entered into by Borrower with respect to services performed at or related to the Mortgaged Property prior to the appointment of Receiver that Receiver deems not to be in the best interest of the receivership after notice to Plaintiff; and

p. to allow Plaintiff, its counsel, appraisers, environmental consultants, and other independent third-party consultants engaged by Plaintiff or its counsel access to the

    Mortgaged Property at all reasonable times and upon reasonable notice to inspect the Mortgaged Property and all books and records, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Mortgaged Property.

  q. to sell all or a portion of the Mortgaged Property and Personal Property free and clear of liens, claims, interests and encumbrances with the approval of the Court.

  5. Subject to the empowerment described in paragraph 4(*l*) *supra*, Receiver shall forthwith deposit all monies received by it at the time it receives them into the bank account referenced herein in paragraph 4(n) *supra* and, after paying the expenses of management and care of the Mortgaged Property and any other amounts provided for herein, hold the balance of the monies, if any, which come into its custody or control until further order of the Court.

  6. Receiver is authorized to deliver this Order on any of the financial institutions that maintain any accounts relating to the Mortgaged Property or Borrower, and any such financial institution and any other persons in active concert or participation with Borrower is authorized to take such steps as are necessary to restrain or prevent Borrower from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits generated in any accounts relating to the Mortgaged Property or Borrower and are authorized to immediately turn over all funds in such accounts to Receiver. Any financial institution maintaining accounts relating to the Mortgaged Property, is authorized to provide to Receiver a complete listing of account numbers under the name of Borrower, including accounts previously closed. Receiver shall have the power and authority to issue demands for the freezing and turnover of funds upon any financial institution or utility company which Receiver has determined is a depository of funds belonging to, or arising from, the receivership estate, whether such accounts be titled in the name of Borrower or not.

  7. Borrower and its respective principals, successors, assigns, partners, affiliates, representatives, servants, contractors, officers, agents and employees are hereby enjoined from collecting or accepting any deposits, rents, payments, fees, incomes or profits arising from or related

to the Mortgaged Property. Any rents received by any of the defendants after entry of this Order shall be turned over to Receiver. Borrower and its respective principals, successors, assigns, partners, affiliates, representatives, officers, agents and employees shall (a) cooperate in all reasonable ways with Receiver, including executing any documents or instruments in conjunction with a sale of all or any portion of the Mortgaged Property that may be approved in accordance with this Order; (b) at Receiver's request, assign or direct accounts, rent payments and rent proceeds to accounts designated by Receiver; (c) at Receiver's request, endorse checks related to the Mortgaged Property to Receiver; (d) prepare and timely file, in good faith, its income tax and other business tax returns and filings; and (e) not cancel or terminate any agreements pertaining to the Mortgaged Property unless expressly instructed by Receiver to do so.

8. Receiver is authorized to and shall pay the following items incurred at its discretion in cash or with credit without further order of Court:

   a. all current and actual operating expenses of the Mortgaged Property incurred in the accomplishment of the powers herein granted, including, without limitation, the professional fees, costs and expenses, the cost of electricity, sewage, water and garbage collection, charges by other utilities, staff, out-of-pocket expenses, and any other items of expense or cost deemed by Receiver as prudent to operate the Mortgaged Property, including, at Receiver's discretion, costs or expenses for services provided by third parties to the Mortgaged Property before the date of this Order;

   b. payment of necessary taxes to ensure the continued operation of the Mortgaged Property so as to protect the interest of the parties to this action;

   c. the normal and ordinary expenses incurred by Receiver during its appointment hereunder;

   d. payment of insurance premiums for hazard, casualty, liability and related insurance coverage to keep the Mortgaged Property insured;

   e. Receiver is empowered, without further approval of the Court to borrow monies from Plaintiff, if Plaintiff elects in its sole and absolute discretion to lend monies to Receiver, or to borrow monies from any other source approved by the Court, to pay for the cost of preservation and maintenance of the Mortgaged Property, including but not limited to, the current costs of security, utilities, insurance, real estate taxes,

  corporate taxes, professionals' fees, normal maintenance and repairs and other necessary operating costs; and

  f. any and all monies advanced by Plaintiff to Receiver pursuant to paragraph 8(e) above shall be added to the indebtedness to Plaintiff and shall be secured by the mortgage, with interest to accrue and to be paid upon all such monies so advanced at the default interest rate set forth in the note and mortgage, and all such advances shall constitute a first lien before the repayment of any and all other claims against the Mortgaged Property, and Receiver shall not be liable for repayment of such amounts.

Notwithstanding anything in this Order or at law which may state or imply to the contrary, Receiver shall not be obligated to expend monies, or make improvements to, or to rehabilitate the Mortgaged Property, or to incur or pay any other expenses or bills in connection with its role as Receiver, except to the extent that monies for such matters are available either from operating revenues generated by the Mortgaged Property and/or funds provided by Plaintiff.

  9. All persons and entities liable for money owing to Borrower arising from the Mortgaged Property (including but not limited to the tenants at the Mortgaged Property) are hereby enjoined from paying said money to any person or entity except Receiver, except as designated by Receiver, to whom all money is hereby directed to be paid.

  10. All persons and entities are hereby enjoined from: (a) interfering in any way with Receiver in discharging its duties hereunder, or with any of the Mortgaged Property to be delivered to Receiver or with the possession of the Mortgaged Property; (b) removing, destroying, concealing or altering any of Borrower's Assets; (c) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing or operation of the Mortgaged Property and Borrower's Assets, except as otherwise permitted under this Order or upon the specific request of Receiver; and (d) taking any action inconsistent with the terms of this Order.

  11. At any time during the pendency of this action, any party in interest hereto may (upon five (5) days' written notice) apply to the Court for further or other instructions with respect

to Receiver's powers and duties pursuant to this Order and/or the acts or omissions of Receiver in fulfilling those duties.

12. During the pendency of this action, Receiver and any party that has appeared in this action may apply to this Court for further directions and guidance and for further power necessary to enable to Receiver to properly fulfill its powers and duties.

13. Receiver shall provide a monthly management report within thirty (30) days after the end of each month during the receivership (commencing thirty (30) days after the entry of this Order), and within 30 days after termination of the receivership, to Plaintiff. The monthly management report shall set forth, to the best of Receiver's knowledge: (i) all receipts, disbursements, cash flow, and all changes in the assets in Receiver's charge, or interests in or claims against the assets, that have occurred during the preceding six (6) months of the receivership; (ii) a capital expenditures report including the type and amount of each capital expenditure made or proposed during the reporting period; (iii) the condition of the Mortgaged Property; (iv) any recommendations as to actions needed to preserve and protect the Mortgaged Property or to otherwise carry out Receiver's duties; (v) marketing and leasing efforts; and (vi) any other information Receiver determines is relevant to the receivership and/or the Mortgaged Property.

14. Receiver is acting as an officer of the Court and not as an agent of any party to this matter, and nothing contained herein shall be deemed to have conferred upon Receiver or Plaintiff the status of mortgagee-in-possession.

15. The receivership estate, Receiver and all employees, agents, attorneys, professionals and management companies it hires, and the employees thereof, shall have no liability for any obligations or debts incurred by Borrower. Receiver and its employees, agents, attorneys and management companies shall have no personal liability, except to the extent arising due to the gross

negligence or willful misconduct of the aforementioned parties, and they shall have no claim asserted against them relating to any of Receiver's duties, actions or inaction under this Order (other than arising due to Receiver's gross negligence or willful misconduct), without prior authority from this Court. Receiver and its employees, agents, attorneys and management companies retained by Receiver (except in instances of the gross negligence or willful misconduct of the aforementioned parties) shall be held harmless by the receivership estate.

16. Upon final order of this Court discharging Receiver from its duties hereunder, Receiver shall disburse any funds remaining in the receivership estate to Plaintiff or other party so ordered by this Court.

17. Receiver is required to submit proof of a receiver's bond with the Clerk of this Court in the amount of $10,000.00 within ten (10) business days of this Order. Upon Receiver's submission of proof of a receiver's bond, Receiver shall be authorized and empowered to perform its duties under this Order, including taking control of Borrower's Assets.

18. In addition to the powers and instructions expressly set forth in this Order, Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Mortgaged Property and Borrower's Assets and otherwise to comply with the terms of this Order.

19. In the event that a bankruptcy case is filed by Borrower during the pendency of the receivership created by this Order, Borrower must give notice of same to this Court, to all parties, and to Receiver, within 24 hours of the bankruptcy filing.

20. Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, Receiver shall do the following:

    a. Immediately contact Plaintiff, and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or

motion to dismiss, and (ii) relief from Receiver's obligation to turn over Borrower's Assets (11 U.S.C. Section 543). If Plaintiff indicates no intention to file such a motion within 10 days, then Receiver shall immediately turn over Borrower's Assets (to the trustee in bankruptcy, or if one has not been appointed, then to Borrower), and otherwise comply with 11 U.S.C. Section 543.

b. If Plaintiff notifies Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then Receiver is authorized to remain in possession and preserve Borrower's Assets pending the outcome of those motions pursuant 11 U.S.C. Section 543(a). During this period, Receiver's authority to preserve Borrower's Assets is limited as follows: Receiver may continue to collect rents, issues, and profits. Receiver may make disbursements, but only those which are necessary to preserve and protect Borrower's Assets. Receiver shall not execute any new leases or other long-term contracts. Receiver shall do nothing that would effect a material change in circumstances of Borrower's Assets.

c. Receiver is authorized to retain legal counsel to assist Receiver with the bankruptcy proceedings.

21. Receiver shall be compensated at the rate of $585 per hour for monthly receivership services, with a maximum of twelve hours per month (the "Monthly Maximum"), as set forth in Exhibit B to the Lloyd Declaration. In the event an unforeseen occurrence may require Receiver to exceed the Monthly Maximum, he will promptly contact Lender to seek modification of the terms of his receivership to ensure the proper management of the Mortgaged Property, or to otherwise resolve the issue. If required, Lender will obtain Court approval prior to making any modifications to these terms pursuant to paragraph 12 above.

22. Receiver may hire the property management firm Canvas Property Group ("Canvas") to manage the Mortgaged Property pursuant to the terms substantially set forth in the proposed term sheet annexed as Exhibit C to the Lloyd Declaration.

23. This Court shall retain jurisdiction of this action for any proceedings necessary to enforce compliance with this Order.

SO ORDERED this _11TH_ day of _SEPTEMBER_, 2024.

United States District Judge